**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MICHEAL J. B.,                                )
                                             )
                          Plaintiff,          )
                                             )          **Case No. 24-CV-496-MTS**
v.                                           )
                                             )
                                             )
FRANK BISIGNANO,[1]                          )
Commissioner of Social Security,             )
                                             )
                          Defendant.          )

**OPINION AND ORDER**

Plaintiff Micheal J. B. requests judicial review of the decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying his application for disability

benefits under the Social Security Act.  Plaintiff appeals the decision of the Administrative Law

Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was

not disabled.  For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision

denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is

disabled under the SSA "only if his physical or mental impairments are of such severity that he is

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account his age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### Background and Procedural History

On April 8, 2021, Plaintiff filed an application for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the Social Security Act. (R. 194-197). He alleged an inability to work beginning on June 25, 2020,[2] due to limitations resulting from spinal stenosis, degenerative disc disease, herniated disc in back, ankylosing spondylitis, chronic left knee pain, bilateral leg pain, left hand pain, and bilateral hand lockup. (R. 213, 216). Plaintiff was fifty-two years old at the

---

[2] According to Plaintiff, he attempted to amend his disability onset date at both hearings, with the most recent date being August 14, 2021. (R. 42, 541).

time of the ALJ's decision.  (R. 213, 529).  He has at least a high school education and no past relevant work.  (R. 529, 543-44).

Plaintiff's application was denied both initially and upon reconsideration.  (R. 104-07, 109-13).  After an administrative hearing, ALJ Dennis LeBlanc issued a decision on August 31, 2022, denying benefits and finding Plaintiff not disabled.  (R. 15-36, 548-69).  The Appeals Council denied review on February 10, 2023.  (R. 1-7, 570-76).  Plaintiff then appealed to this Court, and on November 28, 2023, United States Magistrate Judge Susan E. Huntsman granted Defendant's unopposed motion to reverse and remand ALJ LeBlanc's decision for further proceedings.  (R. 583-85).  The Appeals Council entered an order remanding the case on December 17, 2023.  (R. 590-93).

On May 30, 2024, ALJ LeBlanc conducted a second administrative hearing via teleconference.  (R. 538-47).  He issued a decision on June 25, 2024, denying benefits and finding Plaintiff not disabled.  (R. 514-31).  The ALJ's decision is final as the Appeals Council did not assume jurisdiction.  20 C.F.R. § 404.984.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 25, 2020.  (R. 517).  At step two, he found Plaintiff suffered from severe impairments of degenerative disc disease of the lumbar and cervical spines, degenerative joint disease involving the knee, and obesity.  *Id*.  The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment.  (R. 519-21).  Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained the RFC to

perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [T]he claimant is able to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. He can stand and/or walk for six hours in an eight-hour workday and can sit for six hours in an eight-hour workday. The claimant occasionally is able to climb ramps and stairs but should never climb ladders, ropes, or scaffolds. He occasionally is able to stoop, kneel, crouch, and crawl. He frequently is able to reach and handle. He should not be exposed to workplace hazards such as unprotected heights and dangerous machinery.

(R. 521).

At step four, the ALJ determined Plaintiff had no past relevant work. (R. 529). Based on the testimony of a vocational expert, the ALJ concluded at step five that Plaintiff could perform the representative jobs of information clerk, furniture rental clerk, and marker, all of which he found existed in significant numbers in the national economy. (R. 530, 544-45). As a result, the ALJ found Plaintiff had not been under a disability from June 25, 2020, through the date of decision. *Id.*

### Errors Alleged for Review

Plaintiff asserts two main errors for review in his challenge to the Commissioner's denial of benefits. (Docket No. 13 at 7). First, Plaintiff argues that the ALJ committed reversible legal error by failing to properly evaluate Dr. Leslie Chan, M.D.'s medical opinion. *Id.* at 7-12. Second, Plaintiff contends that the ALJ did not properly evaluate Plaintiff's subjective statements. *Id.* at 12-15.

### The ALJ's Consideration of the Medical Opinion Evidence

Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a

claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "articulate" in the decision how persuasive he finds each medical source's opinion by considering a list of factors. *Id.* §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). *Id.* §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).[3]

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

---

[3] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

Plaintiff argues that when determining the persuasiveness of Dr. Chan's opinion, the ALJ failed to adequately address the supportability and consistency factors. (Docket No. 13 at 11). A review of the record reveals that the ALJ discussed Plaintiff's treatment by Dr. Chan in detail when summarizing the medical evidence, including Plaintiff's first visit with Dr. Chan in May 2022 through his last record visit in October 2023. (R. 507-09, 524-26, 789-91, 804-06, 832-35). He also outlined the functional limitations included on the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" in which Dr. Chan found Plaintiff could sit, stand, and walk at one time for less than thirty minutes and for a total of less than two hours in an eight-hour workday. (R. 525, 767). Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently. (R. 767-68). He had manipulative limitations, including only occasionally feeling and reaching in all directions and overhead with his right and left hands and rarely handling and fingering with both hands. (R. 768). Plaintiff needed to make positional changes every ten minutes to relieve his symptoms. *Id.* Dr. Chan found Plaintiff's pain or medications would affect his ability to concentrate to the extent he was limited to simple tasks, he was unable to perform work on a sustained and continuing basis, and he would be absent from work around twice a month because of his impairments or treatment. (R. 769). The ALJ noted that in reaching this conclusion, Dr. Chan "did not state the primary problem that would cause the absences." (R. 525).

After thoroughly reviewing Dr. Chan's treatment of Plaintiff, the ALJ ultimately found his opinions unpersuasive, as they were unsupported by Dr. Chan's own treatment of Plaintiff. (R. 528). The ALJ noted that Dr. Chan initially evaluated Plaintiff on May 27, 2022, finding that Plaintiff had tenderness at the bilateral lumbar paraspinal and sacroiliac joint area, upper extremity muscle strength of 4+/5 on both sides, and lower extremity muscle strength of 5/5 on both sides. (R. 508, 528). Dr. Chan also observed that Plaintiff had a normal gait and used no mobility

7

assistive device. *Id.* The ALJ then relied upon Plaintiff's subsequent visits with Dr. Chan on September 26, 2022; April 21, 2023; and October 2, 2023, noting the examinations yielded similar results with respect to Plaintiff's gait, extremity muscle strength, and lack of mobility assistance. (R. 528, 790, 805, 833). The ALJ again noted that Dr. Chan failed to explain why Plaintiff would need to miss work twice per month or what work activities Plaintiff could perform during the remainder of an eight-hour workday. (R. 528).

The ALJ also determined that Dr. Chan's opinions were inconsistent with the other record evidence. (R. 528). Specifically, he referenced findings by Tyler Auschwitz, M.D., from November 2022, wherein Dr. Auschwitz examined Plaintiff and noted he exhibited no joint erythema or tenderness and no gross muscular abnormalities. (R. 528, 779). He found Plaintiff's symptoms were not consistent with imaging findings and recommended conservative treatment. *Id.* The ALJ also noted that Plaintiff's radiofrequency ablation in November 2023, provided him with thirty-percent relief of his lumbar pain. (R. 528, 858-61).

Plaintiff contends that the ALJ's analysis failed to properly evaluate the degree to which Dr. Chan's opinions were supported by her treatment notes, as he minimized the number of visits when Plaintiff displayed "lumbar paraspinal sacroiliac joint area tenderness" and disregarded findings of positive Faber and Spurling's tests, pain triggered during examination, and decreased bilateral psoas muscle strength. (Docket No. 13 at 12). Contrary to Plaintiff's argument, however, in his detailed summary of Dr. Chan's treatment visits with Plaintiff, the ALJ referenced four visits with Dr. Chan, with each including many of the findings Plaintiff asserts the ALJ failed to address. (R. 524) (noting bilateral upper extremity strength of 4+/5 and tenderness at the bilateral lumbar paraspinal and sacroiliac joint area and that facet loading of the cervical spine and lumbar spine triggered pain during May 2022 visit); (R. 525) (same in September 2022); (R. 526) (noting

tenderness in the bilateral trapezius muscles and bilateral lumbar paraspinal and sacroiliac joint areas, facet loading of the cervical and lumbar spine triggered pain in April 2023); *Id.* (noting tenderness in the bilateral trapezius muscles and lumbar paraspinal muscles, mild tenderness over the left sacroiliac joint in October 2023). Thus, the Court finds no error, as the ALJ's discussion allows for adequate court review. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

Moreover, Plaintiff also maintains that the ALJ's consistency analysis was deficient, as he was "highly selective" in the evidence he chose to rely upon. (Docket No. 13 at 12). For example, Plaintiff points to certain imaging and examination findings the ALJ failed to address, including "multilevel cervical and lumbar spinal degenerative changes with spinal canal and neuroforaminal stenosis; painful and/or limited cervical and lumbar mobility; observable discomfort; bilateral psoas muscle weakness; paraspinal, trapezius, and sacroiliac joint tenderness; [and] positive Spurling's and Faber testing." *Id.* at 12-13. Plaintiff further argues the ALJ should have explained the significance of Plaintiff's experiencing only thirty-percent relief of his pain from the November 2023 radiofrequency ablation, which indicated that "a majority of his pain continued despite treatment." *Id.* at 13. However, as noted above, the ALJ discussed Dr. Chan's treatment notes in detail as well as the other objective medical evidence in the record. (R. 523-26). He referenced certain evidence that was inconsistent with Dr. Chan's opinion from the record. (R. 528). Again, the ALJ's discussion allows for adequate court review, and the Court declines to reweigh the evidence.

Finally, Plaintiff asserts that the ALJ "plainly drew a speculative adverse inference" based upon the ALJ's reference to Dr. Chan's completing Plaintiff's disability paperwork with him, as there is nothing in the record suggesting that such opinions "did not represent Dr. Chan's own medical judgments or were merely reflections of [Plaintiff's] own subjective beliefs." (Docket No. 13 at 11). However, it is not clear that the ALJ made a speculative adverse inference with respect to the statement of Dr. Chan. The ALJ merely noted what Dr. Chan herself included in a treatment note: "[Plaintiff] brought in some paperwork to be filed for his disability and I completed it with him." (R. 528, 806). Nevertheless, the ALJ provided several other reasons for finding Dr. Chan's opinion was unpersuasive. (R. 528).

Here, the Court finds Plaintiff's arguments are without merit. The ALJ included both supportability and consistency analyses and therefore applied the correct legal standards by articulating why he found Dr. Chan's opinions unpersuasive. *See Rusty F. v. Kijakazi*, No. 21-CV-7-CVE-CDL, 2022 WL 10365886, at *6 (N.D. Okla. Apr. 26, 2022), *report and recommendation adopted*, 2022 WL 4465178 (N.D. Okla. Sept. 26, 2022), citing *Mays v. Colvin*, 739 F.3d 569, 574–76 (10th Cir. 2014) ("An ALJ is not required to accept a medical source's opinion; rather, the ALJ need only provide sufficient reasons for rejecting an opinion.").

### The ALJ's Evaluation of Plaintiff's Symptoms

When evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3),

including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7-*8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence he relies on in evaluating the [consistency of the claimant's subjective complaints],' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167, quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff argues that the ALJ's evaluation of Plaintiff's subjective symptoms was deficient because the ALJ failed to provide reasons for discounting Plaintiff's symptoms based upon the relevant factors. (Docket No. 13 at 15). He further contends that the ALJ failed to acknowledge the "generally limited nature" of his daily activities, to account for his pain in performing them, and to explain how his subjective statements were unbelievable despite his ongoing treatment. *Id.* at 15-16. Defendant counters that the ALJ's symptom evaluation is sufficient, as the ALJ considered several factors, and the Court should decline to reweigh the evidence. (Docket No. 19 at 6-8).

In evaluating Plaintiff's subjective complaints, the ALJ outlined the two-step process set forth in SSR 16-3p and the requirements of 20 C.F.R. § 404.1529. (R. 521). The ALJ thoroughly

11

discussed Plaintiff's testimony from the August 2022 hearing, noting that Plaintiff's job ended because he could no longer perform the duties required, as his back pain radiated into his legs affecting his ability to walk. (R. 522). If he stood too long, Plaintiff experienced spasms in his neck with radiation into his arms, low back, and legs. *Id.* Lifting ten to fifteen pounds resulted in spasms in his neck and back. *Id.* To relieve pain, Plaintiff had to lie down several times per day for fifteen to twenty minutes. *Id.* The ALJ noted that Plaintiff had radiofrequency ablation and epidural steroid injections to treat his pain, and Plaintiff's report that such treatment was not helping. *Id.* Plaintiff also took medication for pain. *Id.* Additionally, the ALJ reviewed Plaintiff's statements from two Adult Function Reports, dated May 4, 2021, and October 5, 2021. *Id.* Plaintiff reported difficulties with bending, kneeling, standing in one spot, lifting, climbing and sleeping. *Id.* The ALJ discussed how Plaintiff had difficulty doing normal daily activities, frequently had to lie down to rest his back or stretch, and used a walking stick. *Id.* Further, the ALJ considered the Third Party Adult Function Report completed by Plaintiff's wife. *Id.*

The ALJ also discussed the medical evidence in detail, including Plaintiff's visits to pain management specialist Christopher Martin, M.D., for his neck and low back pain. (R. 523). Dr. Martin diagnosed Plaintiff with cervical disc disorder, radiculopathy, and lumbosacral spondylosis without myelopathy. *Id.* The ALJ noted Plaintiff's discussions with Dr. Martin about his treatment options and prior treatments to help his back pain, and that Dr. Martin treated Plaintiff with steroid injections and bilateral radiofrequency ablation. (R. 523-24). The ALJ further discussed Plaintiff's visits with Curtis Coggins, M.D., notably that Dr. Coggins' treatment regimen involved oral pain medications and a muscle relaxant for Plaintiff's neck and back pain. (R. 524). He noted that at a May 6, 2022, appointment with Dr. Coggins, Plaintiff reported he was able to function

and "complete activities of daily living with pain medication." *Id.* Plaintiff reported that his pain was controlled with medications. (R. 524, 526).

Finally, the ALJ considered Plaintiff's treatment with Drs. Chan and Auschwitz, and nurse practitioner Caroline Wescott, which included various forms of treatment with varying levels of success. (R. 524-26). He specifically noted Dr. Auschwitz's recommendation to Plaintiff for conservative treatment and no neurological intervention. (R. 529). He discussed a series of MRI scans, noting how Plaintiff showed "multilevel degenerative changes" that had progressed in the spine between the MRI performed on May 5, 2017, and the one performed on September 26, 2022. (R. 525). He further relied upon examination findings of 4+/5 muscle strength in Plaintiff's upper extremities, 5/5 muscle strength in the lower extremities, and Plaintiff's walking with normal gait and without an assistive device. (R. 529).

Ultimately, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but he determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence and other evidence in the record. (R. 526). In analyzing Plaintiff's subjective complaints, the ALJ clearly considered Plaintiff's capacity to perform various activities of daily living; the location, duration, frequency, and intensity of his pain and other symptoms; precipitating and aggravating factors; and the type, dosage, effectiveness, and side effects of Plaintiff's medication. (R. 521-26); *see also* 20 C.F.R. § 404.1529(c)(3). He concluded that although "[Plaintiff] alleges that his physical limitations preclude him from sustaining regular and continuous work" at the light level, "the nature, scope, and findings from the longitudinal treatment records [d]o not support the intensity or persistence of his subjective allegations." (R. 529).

Based on the foregoing, the Court finds there is no indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. He addressed Plaintiff's subjective statements and set forth the specific evidence relied upon in his evaluation. *See Keyes-Zachary*, 695 F.3d at 1167, quoting *Qualls*, 206 F.3d at 1372. Thus, the Court finds no error, as the ALJ's decision allows for meaningful review in satisfaction of SSR 16-3p.

### Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 31st day of March, 2026.

MARK T.  STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT